UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL CASE NO. 3:23-CR-0247-B |
| | § | |
| HOLLY ANN ELKINS, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION ORDER DENYING MOTION TO DISMISS INDICTMENT**

Before the Court is Defendant Holly Ann Elkins' Motion to Dismiss (Doc. 26). The Court held a hearing on March 20, 2024 to address arguments raised by each side. Having carefully considered the arguments raised at the hearing and in the motion papers, as well as the applicable law, the Court **DENIES** Defendant's Motion.

I.

BACKGROUND

The three-count criminal indictment charges Defendant with the following: (I) Conspiracy to Stalk in violation of 18 U.S.C. § 371; (II) Stalking Using a Dangerous Weapon and Resulting in Serious Bodily Injury, Life Threatening Bodily Injury, and Death, in violation of 18 U.S.C. §§ 2261(b), 2261A(2)(A) & (B); and (III) Using, Carrying, Brandishing, and Discharging a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii). Doc. 1, Indictment. The Government alleges Defendant conspired with her then-boyfriend, Andrew Beard, to cyberstalk and murder the mother of Beard's child. *Id.* at 1. Defendant allegedly used the following devices to cyberstalk: "a computer, the internet, electronic mail, a telephone, and a

global positioning system ('GPS')." Doc. 1, Indictment, 5. According to the Indictment, Defendant did the following: she and Beard placed a GPS on the victim's car, she made two telephone calls to the police in which she "falsely reported" the victim driving dangerously on a highway and that the victim's mother had assaulted Defendant, and Defendant texted Beard a photo of the victim's license plate to facilitate another "false[] report[]" call to police after she and Beard "planted illegal drugs and a pistol" in the victim's car. *See id.* at 2–3. Additionally, Defendant is alleged to have purchased shotgun shells and a knife with Beard. *Id.* at 4. Beard murdered the victim by shooting and stabbing the victim to death. *See* Docs. 61, Factual Resume, *United States v. Beard*, No. 3:20-CR-567-B (N.D. Tex); Doc 62, Plea Agreement. Defendant later "attempted to provide an alibi for Beard by falsely telling law enforcement that Beard was . . . with her at the time of [the victim's] murder." Doc. 1, Indictment, 4.

## II.

## LEGAL STANDARD

In this Circuit, "'[t]he propriety of granting a motion to dismiss an indictment under [Federal Rule of Criminal Procedure] 12 by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact.'" *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (citation omitted). "If a question of law is involved, then consideration of the motion is generally proper." *Id.* (citation omitted)). On the other hand, if at its core an argument raises a question of fact, that question must go to a jury. *United States v. USPlabs, LLC*, 338 F. Supp. 3d 547, 584 (N.D. Tex. 2018) (Lindsey, J.) ((quoting *Sparf v. United States*, 156 U.S. 51, 78-79 (1895) ("It is the province of the court, and of

the court alone, to determine all questions of law arising in the progress of a trial; and it is the province of the jury to pass upon the evidence, and determine all contested questions of fact.")).

## III.

## ANALYSIS

*I. Counts One & Two Do Not Exceed Congress's Commerce Clause Power*

Defendant contends that Counts One and Two must be dismissed because as applied to the Indictment, the charges exceed congressional power under the Commerce Clause and violate the Tenth Amendment. Doc. 26, Mot., 2–7. Both Counts depend on the Government proving the offense of cyberstalking, reproduced in relevant part below.

> Whoever—
>
> (2) with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, uses the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that–
>
> (A) places that person in reasonable fear of the death of or serious bodily injury to a person, a pet, a service animal, an emotional support animal, or a horse described in clause (i), (ii), (iii), or (iv) of paragraph (1)(A); or
>
> (B) causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person described in clause (i), (ii), or (iii) of paragraph (1)(A)
>
> shall be punished as provided in section 2261(b) or section 2261B, as the case may be.

18 U.S.C. § 2261A.

The Government must also prove a "result" of cyberstalking, reproduced in relevant part below:

> A person who violates this section or section 2261A shall be fined under this title, imprisoned–
>
> (1) for life or any term of years, if death of the victim results;

   (2) for not more than 20 years if permanent disfigurement or life threatening bodily injury to the victim results;

   (3) for not more than 10 years, if serious bodily injury to the victim results or if the offender uses a dangerous weapon during the offense;

or both fined and imprisoned.

18 U.S.C. § 2261(b); *see also* Fifth Circuit Pattern Jury Instruction (Criminal Cases) § 2.86B (2019) (requiring as an element of § 2261A(2) the result of death, serious bodily injury, or life-threatening injury when seeking enhanced sentence under § 2261(b)).

  Defendant's central qualm appears to be with two alleged facilities of interstate commerce—the phone and GPS devices. She contends neither device was directly used against the victim to stalk nor subjectively known to the victim. Doc. 26, Mot., 3–7 ("Indictment . . . shows no allegation of a direct, communicative use of any of its purported instruments of interstate commerce that placed [the victim] in fear or subjected her to emotional distress."). Defendant also questions whether a GPS device, as used here, is a facility of interstate commerce under § 2261A(2) because "there was no interstate use of GPS trackers." *Id.* at 6. Finally, Defendant argues that because Counts One and Two are not within Congress's constitutional powers that they must also be dismissed for infringing upon the Tenth Amendment. *Id.* at 7.

  The Court finds that Counts One and Two are not rendered legally defective in the absence of a "direct, communicative" act of stalking. Defendant's argument would add a requirement to the cyberstalking statute that does not exist. Neither the text of § 2261A(2) nor other courts in this Circuit require the facilities of interstate commerce to be used in a direct, communicative manner against the victim. Instead, the cyberstalking statute requires only that the facilities be used with the requisite intent "to engage in a course of conduct." 18 U.S.C § 2261A(2). Moreover, the Court finds at least some cases raised by Defendant did not involve

using a facility "directly" against the victim. *See* Doc. 26, Mot., 4 (citing *United States v. Petrovic*, 701 F.3d 849 (8th Cir. 2012) and *United States v. Sayer*, 748 F.3d 425 (1st Cir. 2014)).

The cyberstalking statute also has no textual basis for Defendant's contention that the victim be subjectively aware of each use of a facility of interstate commerce. Doc. 26, Mot., 5–7. A defendant's "course of conduct" against the victim is what must "place[] that person in reasonable fear of . . . death . . . or serious bodily injury" or "cause, attempt[] to cause, or . . . be reasonably expected to cause substantial emotional distress." 18 U.S.C. §§ 2261A(2)(A)–(B). From this text, the Court finds no express or implied statutory mandate that an intentional use of any single facility of interstate commerce be subjectively known to the victim. *Id.*

Finally, the Court need not address Defendant's contention that GPS devices are not facilities of interstate commerce because the facts alleged in the Indictment overcome her Commerce Clause challenge. Doc. 26, Mot., 6; § 2261A(2). A valid "course of conduct" must include intentional use of "mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce." 18 U.S.C. § 2261A(2). Congress may regulate "the instrumentalities of interstate commerce, or person or things in interstate commerce, *even though the threat may come only from intrastate activities*," See *United States v. Lopez*, 514 U.S. 549, 558 (1995) (emphasis added); *cf.* Doc. 26, Mot., 2, 6. It is not necessary that a device cross state lines to be an instrumentality or facility of interstate commerce. *United States v. Marek*, 238 F.3d 310, 319–20 (5th Cir. 2001).

The cyberstalking statute at issue defines a "course of conduct" as "a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose." 18 U.S.C. § 2266(2). The plain

language of § 2261A(2) also does not require that each of the "2 or more acts" constituting a "course of conduct" involve use of a facility of interstate commerce. *Accord United States v. Shrader*, No. 1:09-cr-00270, 2010 WL 2425900, at *4 (S.D.W. Va. June 10, 2010). The Fifth Circuit has recognized phones to be facilities of interstate commerce. *Marek*, 238 F.3d at 319–20. Here, that hook to interstate commerce power exists. The Indictment alleges Defendant used or facilitated phone use four times while committing the conspiracy to stalk and cyberstalking. Doc. 1, Indictment, 3; *accord* Doc. 26, Mot., 5. Accordingly, regardless of whether a GPS is a facility of interstate commerce, the Indictment is within the constitutional bounds of Congress's power.

*II. Count Three Involves a "Crime of Violence"*

Count Three charges Defendant with "knowingly us[ing,] carr[ying,] brandish[ing,] and discharge[ing] a firearm . . . during and in relation to a crime of violence . . . namely stalking using a dangerous weapon resulting in serious bodily injury, life threatening bodily injury, and death." Doc. 1, Indictment, 6 (charging violation of 18 U.S.C. § 924(c)(1)(A)(iii)). Defendant moves to dismiss Count Three, contending that generic cyberstalking alone does not constitute a predicate "crime of violence" under § 924(c). Doc. 26, Mot., 12–14. The Government responds that the Court must review the offense as well as the charged results when assessing whether there is a predicate crime of violence. Doc. 29, Resp., 7–10.

Section 924(c)'s "elements clause" is the only remaining source of analysis to define a crime of violence. *See United States v. Davis*, 139 S. Ct. 2319, 2336 (2019) (invalidating "residual clause" under 18 U.S.C. § 924(c)(3)(B)); *Borden v. United States*, 593 U.S. 420, 424 (2021). Under the elements clause, a crime of violence means an offense that has as a required element "the use, attempted use, or threatened use of force against the person or property of another." 18 U.S.C.

§ 924(c)(3)(A). The force must be "capable of causing physical pain or injury to another." *In re Hall*, 979 F.3d 339, 343 (5th Cir. 2020). Recently, the Supreme Court also clarified that if an offense only has mere reckless, negligent, or accidental use of force as an element, that offense cannot be a crime of violence. *Borden*, 593 U.S. at 429 ("The phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual. Reckless conduct is not aimed in that prescribed manner."). In effect, the force must be purposeful or knowing. *See id*.

Defendant and the Government urge the Court to determine whether the purported crime of violence—cyberstalking as charged in Count Two—satisfies the elements clause. A finding that the offense charges in Count Two is a crime of violence has not been raise in this Circuit. To determine whether Count Two meets the definition of a "crime of violence" is thus a question of first impression.

The parties' motion papers contain ample argument regarding use of the "categorical approach" versus the "modified categorical approach" but both of these tests were developed in the sentencing context, and are predominantly used in *post-trial* matters. For example, the "categorical approach," was developed so that a *sentencing court* could determine whether a defendant's prior conviction qualified as a predicate offense for purposes of an Armed Career Criminal Act ("ACCA") sentencing enhancement. *Taylor v. United States*, 495 U.S. 575, 598–602 (1990); *see also Descamps v. United States*, 570 U.S. 254, 257 (2013) ("To determine whether a past conviction is [a violent felony], courts use what has become known as the 'categorical approach.'"). The categorical approach teaches that a sentencing court may "look only to the statutory definitions"—i.e., the elements—of a defendant's offense and not "to the particular facts underlying [the offense]" in

determining whether the offense qualifies as a "crime of violence" for purposes of a sentencing enhancement. *Taylor*, 495 U.S. at 600. A standardized approach such as this takes into account the realities of sentencing, including having to analyze a conviction that may be several years old. But as some courts have also found, the sentencing stage is distinguishable from the context of a motion to dismiss an indictment. *United States v. Checora*, 155 F. Supp. 3d 1192, 1196 (D. Utah 2015) ("This court agrees with the reasoning of the courts questioning whether the categorical approach is appropriate in the context of a § 924(c)(3) case, especially in the context of deciding a pretrial motion to dismiss."); *United States v. Wells*, No. 214-CR-280, 2015 WL 10352877, at *4 (D. Nev. Dec. 30, 2015), *report and recommendation adopted*, 2016 WL 697107 (D. Nev. Feb. 19, 2016), *aff'd*, 827 F. App'x 664 (9th Cir. 2020).

The Government, on the other hand, asks the Court to employ what is known as the "modified categorical approach" to decide whether Count Two would constitute a crime of violence. Doc. 29, Resp., 8–9. The modified categorical approach—also usually conducted *after trial*—permits a court to review the indictment to determine what part of a divisible statute was the basis for a conviction. *See In re Hall*, 979 F.3d at 343 (5th Cir. 2020). After determining the underlying convicted offense, the Court asks whether such a conviction qualifies as a crime of violence. *Id.* Here, the Government must prove two divisible sections of cyberstalking: the offense itself and the results clause. *See* 18 U.S.C. §§ 2261A(2), 2261(b); Fifth Circuit Pattern Jury Instruction (Criminal Cases) § 2.86B (2019) (requiring as an element of § 2261A(2)(A) the result of death, serious bodily injury, or life-threatening injury when seeking enhanced sentence under § 2261(b)). But even under the modified categorical approach, the mandate to categorically define Count Two as a crime of violence especially complex. There are several permutations of Count

Two, and without a conviction to consider, the Court must consider each permutation to reach a decision.

As a threshold matter, the Court finds neither the categorical approach nor the modified categorical approach applicable in the context of a motion to dismiss an indictment. *Accord United States v. McDaniels*, 147 F. Supp. 3d 427, 432 (E.D. Va. 2015). But because the Court must determine whether Count Two constitutes a crime of violence, *United States v. Credit*, 95 F.3d 362, 364 (5th Cir. 1996) ("[I]n the context of jury instructions, the definition of a 'crime of violence' is a matter of statutory interpretation that is 'purely legal judgment' for the Court."), the Court assumes the modified categorical approach were to apply. *See McDaniels*, 147 F. Supp. 3d at 432. Under this approach, the Court concludes the charged offense under §§ 2261A(2) and 2261(b) qualifies as a crime of violence. Given the intentionality behind the *actus rea* in § 2261A(2) and the physical severity of the results in §2261(b)(1)–(3), execution of the offense at the very least requires intentional attempted or threatened use of force under the elements clause. 18 U.S.C. § 924(c)(3)(A). In other words, engaging in multiple, intentional acts through a "course of conduct" that proximately causes death, serious bodily injury, or life-threatening bodily injury involves a sufficiently high degree of contemplated violence to knowingly attempt to cause or threaten physical pain or injury, under the definition of a crime of violence. *Borden*, 593 U.S. at 429; *In re Hall*, 979 F.3d at 343. The Court has a difficult time imagining a case where an actor commits a violation under §§ 2261A(2) and 2261(b)(1)–(3), with the requisite level of intention and harm, and does not also intentionally attempt or threaten to use force. *See United States v. Runyon*, 994 F.3d 192, 203 (4th Cir. 2021); *United States v. Tsarnaev*, 968 F.3d 24, 104 (1st Cir. 2020); *United States v. Conlan*, 786 F.3d 380, 386 (5th Cir. 2015) ("To violate [§ 2261A(2)] one

must both intend to cause victims serious harm and in fact cause a reasonable fear of death or serious bodily injury.").

At this stage of the case, the Court finds that any permutations of Count Two may be considered a crime of violence under Count Three. But to hold that all possible convictions arising out of §§ 2261A and 2261(b) constitute crimes of violence would be premature, and ultimately only serve as an advisory opinion. Therefore, the Court's determination is limited to the charged offense in Count Two, as used to support Count Three.

## IV.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss Indictment is **DENIED**. If the facts adduced at trial suggest there is no basis for a finding of a crime of violence, Defendant may raise this argument again in motion practice after trial.

SO ORDERED.

SIGNED: March 26, 2024.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE